**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael William STRAND,
Defendant-Appellant.**

No. 79–1155.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 21, 1980.

Decided March 19, 1980.

Rehearing Denied April 22, 1980.

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on the brief), for plaintiff-appellee.

Richard J. Leedy, Salt Lake City, Utah, for defendant-appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Michael William Strand (Strand) appeals his jury convictions of subscribing a false income tax return in violation of 26 U.S. C.A. § 7206(1) and fraud in the sale of securities in violation of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) and 77x. A third charge for interstate transportation of stolen property was dismissed upon Strand's motion at the conclusion of the Government's case.

The alleged violations occurred during 1973. Strand was then involved in numerous selling and purchasing stock transactions of Epoch Corporation (Epoch), being traded on the over-the-counter exchange. Strand effectuated these transactions through his own accounts and through various nominee accounts [1] at different brokerage houses. By utilizing both his own and various nominee accounts, Strand was able to control the purchase and sale "prices" of Epoch stock and create the appearance of an active market for its securities. In summarizing these transactions, Special Agent David Jensen of the Internal Revenue Service estimated Strand's Epoch transactions produced gross receipts of $293,793.37. The Government also established that during this same time frame, Strand was involved in preparations for two mergers for which he received finder's fees of $29,000.00.

Exhibit 27, admitted as a certified copy of Strand's income tax return for 1973, showed zero tax computations and income. It did not contain references to the gross receipts relating to Strand's sale of stocks or the aforesaid finder's fees.

Strand defended the charge that he had subscribed a false income tax return in violation of § 7206(1) on the basis that he had actually suffered a loss of $7,000 in 1973 on the Epoch transactions; that he did not realize he had any tax reporting obligation until after 1973 when he "heard" that even though he did not have income he was obligated to file; and that, accordingly, in January, 1975, he filed a 1973 return.

Strand defended the fraud in the sale of securities charge on the basis that: he took

---

1. A nominee account is one in which the account is listed in the name of an individual, when in fact the transactions within the account are for someone other than the named individual.

over trading in Epoch corporation when he thought its proposed merger with an insurance company would cause its stock to increase in value; the sale of Epoch stock, giving rise to the charges, was initiated by one Bruce Allen Jensen (Jensen); Jensen managed the entire transaction and was the principal actor throughout the whole transaction; he (Strand) was not aware that his account had been improperly used by Jansen; and when, as here, the alleged defrauded party, Jensen, was a principal in the transaction and wholly aware of the nature of the fraud, there was no fraud on that person simply because the transaction did not prove to be as beneficial as expected.

Following the jury verdicts of guilty on the charges of subscribing a false tax return (Count I) and fraud in the sale of securities (Count II), Strand was sentenced to three years on Count I, and five years on Count II, with all but six months suspended. Strand was ordered to serve the six months in a "jail type" facility. He was placed on probation for the balance of the sentence.

On appeal, Strand contends the trial court erred, *inter alia*, in: (1) instructing the jury on materiality in Count I; (2) not granting his motion to sever the Counts; (3) allowing specific evidence "of the general bad character of the appellant"; (4) imposing a different burden of proof on Count II in contradiction to another district judge's previous ruling; (5) not correcting the prejudicial error committed by the prosecutor's failure to produce evidence properly discoverable under Rule 16(a)(1)(A); and (6) refusing to dismiss Count II because of prejudicial pretrial delay.

## I.

■ Strand contends the Court erred in instructing the jury on the materiality issue found in Count I of the indictment and in treating the issue as one of law. Strand argues that in so instructing, the Court effectively denied him his right to trial by jury.

Count I charged Strand with subscribing a false tax return in violation of § 7206(1). Section 7206(1) provides in part:

Any person who—

1) Willfully makes and subscribes any return, . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter, . .

\* \* \* \* \* \*

shall be guilty of a felony . . .

In instructing on Count I the Court stated:

The question of materiality of the allegedly false statements made in connection with the subscribing of a tax return is a question of law for the Court. The Court instructs you that if you find that a substantial amount of gross receipts or other income was omitted from the tax return at issue herein, such omission is of a material matter as contemplated by Section 7206, Subsection 1, of Title 26 of the United States Code.

[R., Supp.Vol. VI at p. 921].

Section 7206(1) is a felony statute, which "is violated when one '[w]illfully makes and subscribes any return', under penalties of perjury, 'which he does not believe to be true and correct as to every material matter'". *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) at p. 350, 93 S.Ct. at p. 2012.

While acknowledging that there is a diversity of authority on whether the issue of materiality under § 7206(1) is properly one of law for the court, Strand contends that the correct rule is set forth in *United States v. Null*, 415 F.2d 1178 (4th Cir. 1969) wherein the Court stated that the test of materiality was:

. . . whether a particular item must be reported "in order that the taxpayer estimate and compute his tax correctly" . . . *This* issue was properly submitted to the jury.

415 F.2d at p. 1181.

This Court has not heretofore ruled on whether the issue of materiality under § 7206(1) is properly one of fact for the jury or one of law for the court. We hold that it is one of law for the court. We agree with this rationale contained in *United States v. Taylor,* 574 F.2d 232 (5th Cir. 1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978):

> This appeal raises squarely the question of whether a taxpayer's failure to report substantial amounts of gross livestock receipts on Schedule F renders the return materially false. We hold that it does.
>
> The trial judge did not err in deciding the question of materiality as a matter of law rather than submitting it to the jury. We have long held that in a prosecution for perjury the materiality of the alleged false statement is a question of law. *Blackmon v. United States,* 108 F.2d 572, 574 (5th Cir. 1940). The rule applies to prosecutions under section 7206(1). *Hoover v. United States,* 358 F.2d 87 (5th Cir. 1966), *cert. denied* 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59 (1966); *accord, United States v. Romanow,* 509 F.2d 26 (1st Cir. 1975).

574 F.2d at p. 235.

The Court, in *Taylor, supra,* further noted:

> Other courts of appeals have considered directly whether omission of gross receipts is a material falsehood. In *Siravo v. United States,* 377 F.2d 469 (1st Cir. 1967), the court affirmed a conviction under section 7206(1), holding that gross receipts from the taxpayer's business were "material items necessary to the computation of income." *Id.* at 472. In striking similarity to Taylor, Siravo received wages, which he reported, and also operated a jewelry assembling business. He made no entry on his Form 1040 opposite the heading "profit (or loss) from business," nor did he file a separate Schedule C. The government proved that he had received gross receipts ranging from $22,242 to $54,319 for the three years in question.

574 F.2d at p. 236. [Footnote omitted].

This view was also adopted in *United States v. Warden,* 545 F.2d 32 (7th Cir. 1976). The Court there stated:

> The test of materiality with respect to a false return case "is whether a particular item must be reported 'in order that the taxpayer estimate and compute his tax correctly.'" *United States v. Null,* 415 F.2d 1178, 1181 (4th Cir. 1969). Since deductions are subtracted from gross income or adjusted gross income to reduce the ultimate tax liability, they are material to the contents of the return. Stated otherwise, the deduction will invariably affect the taxpayer's liability. Thus, when Judge McLaren instructed the jury that the deductions were material matters as that term is used in the indictment, he did no more than state the obvious fact that deductions affect the computation of tax liability.

545 F.2d at p. 37.

In adopting this rule, we do not, as well stated in *United States v. Haynes,* 573 F.2d 236 (5th Cir. 1978), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978), interfere with the jury's obligation of deciding the ultimate issue of whether the returns were willfully falsified:

> Accordingly, we hold that the materiality question under § 7206(2) should be treated no differently than the same issue under § 7206(1) and other federal perjury statutes. That is, materiality is a question of law to be decided by the court. We point out that the jury still must decide the ultimate issue of whether the returns had been willfully falsified, and this issue is generally the focal point of § 7206 cases. *See United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Brown,* [548 F.2d 1194 (5 Cir. 1977)] *supra.* In the instant case, the jury had to find that Haynes had willfully inflated legitimate deductions or manufactured non-existent deductions in order to find him guilty. *See United States v. Warden,* 545 F.2d 32 (7 Cir. 1976). Thus, the trial judge in the

instant case correctly concluded that the materiality question was one of law for the court to decide.

573 F.2d at pp. 240–241.

## II.

Strand argues that the Court erred in not granting his motion to sever Count I, (subscribing a false tax return) from the counts of fraud in the securities transactions and interstate transportation of stolen property. (As noted, *supra*, Count III, charging Strand with interstate transportation of stolen property was dismissed by the Court at the end of the Government's case.)

Strand contends that the joinder of Counts I and II was improper under the Fed.Rules Cr.Proc. rule 8(a), 18 U.S.C.A., which provides.

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Strand further argues that even if Counts I and II were properly joined under Rule 8(a), the Court abused its discretion in failing to grant his motion to sever and elect under Fed.Rules Cr.Proc. rule 14, 18 U.S.C.A. Rule 14 provides in part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

■■ The decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice. *United States v. Heath*, 580 F.2d 1011 (10th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). A trial court may grant a severance if it appears that the defendant or Government is prejudiced by joinder. *United States v. Herring*, 582 F.2d 535 (10th Cir. 1978). In order to obtain a severance, a defendant must show clear prejudice resulting from joinder at trial. *United States v. Bridwell*, 583 F.2d 1135 (10th Cir. 1978). The fact that severance would improve chances for acquittal is not sufficient. *United States v. Heath, supra; United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

■ Applying these standards to the case at bar, we hold that the trial court did not err in refusing to grant Strand's motion for severance. The interrelationship of the evidence, vis-a-vis the charges of submitting a false tax return and fraud in the sale of securities, was extremely clear, and, for the most part, inseparable. Strand's argument that the investigations of the charges were handled separately and that severance was necessarily proper is of no moment, when, as here, evidence of submitting a false tax return was directly related to evidence of fraud in the sale of securities. Furthermore, as urged by the Government, the Court properly instructed the jury on the separate nature of the offenses charged:

[By the Court]

You are instructed that you must consider each of the two counts by itself. Each offense charged is a separate offense and must be considered by you as a separate offense.

If the essential elements charged as to any count have been established by the evidence to your satisfaction and beyond a reasonable doubt, it is your duty to find the defendant guilty as charged in the particular count of the indictment. On the contrary, if any one or more of the essential elements of the offense charged as to any count has not been established by the evidence to your satisfaction and beyond a reasonable doubt, or if you believe the defendant to be not guilty of such count, or if you have a reasonable doubt thereof, it is your duty to return a

verdict of not guilty as to the defendant as to such count.

[R., Supp. Vol. VI at pp. 918–919].

We hold that the trial court did not err in refusing to grant Strand's motion to sever.

### III.

■ Strand contends "[t]he trial court committed error as to Count II of the indictment in instructing the jury in the alternative as to acts sufficient to convict where another district judge had imposed a different burden on the prosecution in refusing to dismiss Count II as duplicitous, and as framed Count II of the indictment was insufficient to allow defendant to know the nature of the charge against him and was duplicitous." [Appellant's brief at p. 39]. Disposition of this contention requires elaboration of specific facts relating thereto.

Several weeks prior to trial, on September 22, 1978, a hearing was held on Strand's motion to dismiss Count II of the indictment. During the course of the hearing Strand argued that Count II was duplicitous in that three sales were set forth in the indictment, that the most fatal defect in the indictment was the failure to allege the instrumentalities (of interstate commerce) which were used and how, and that it was impossible to defend the case "unless I know what . . . [Strand] . . . is charged with doing".

In response, Government counsel stated that the indictment was sufficient in that it: (1) charged a crime with sufficient clarity so as to allow Strand to prepare a defense and (2) protected Strand against being twice placed in jeopardy for the same offense; that Count II of the indictment set forth one scheme or device in connection with the offer or sale of certain securities; and that the six subparagraphs of Count II setting forth specific events and transactions all portray and describe different aspects of a complete transaction, and, as such, they all constitute part of one scheme.

In denying the motion to dismiss, the Court stated:

The Court will rule that the motion is denied. The Government is charged with proving all of those things and it is the sales as contemplated under the statute. [R., Supp. Vol. I at p. 23].

In so doing the Court ruled, according to Strand, that the Government was obligated to prove each of the offenses conjunctively alleged in Count II.

Strand's case was thereafter assigned to another judge. After all of the trial evidence was presented, but prior to the Court's instructions to the jury, the following colloquy occurred in chambers.

THE COURT: All right. Make your motion.

MR. LEEDY: [Counsel for Strand] If it please the Court, prior to instructing the jury, we would request that the Court give an instruction that the government be required to prove all of the allegations contained in count two of the indictment. This motion is made on the grounds and for the reason of the earlier ruling of Judge Anderson in this case that the indictment would not be dismissed, because of the representations of the U.S. Attorney that they would prove all of the allegations contained in count two, and that such proof would be necessary before a conviction.

MR. SNARR: [Government Attorney] I would like to respond to that, Your Honor, if I might.

THE COURT: All right.

MR. SNARR: I think what Mr. Leedy has reference to are the six subparagraphs of the count two which spell out the scheme to defraud that the government has alleged. We do allege that each of those six subparagraphs are part of the same scheme to defraud, and that they are all interrelated and a necessary part of that scheme. We feel that the Court's suggested instruction coming from Devitt and Blackmar, Section 54.07, covers the point in that it requires that the jury find the defendant to be involved with that particular scheme which we have spelled out in those six subparagraphs, and with that instruction, and

entitled, "You must find specific scheme as charged," we believe that that is an appropriate instruction consistent with the law, and also consistent with Judge Anderson's ruling on that point.

THE COURT: Well, if I had made a ruling, I would have reversed myself. If that's what he's ruled, that you have to prove every one of them, because that's not the law. The law is that they must prove one or more. And that's the way I'm going to rule. So the motion will be denied.

[R., Supp. Vol. VI at pp. 844–845].

Pursuant to this ruling, the Court instructed the jury in detail relative to Count II by reading Count II, verbatim, and by reading §§ 77q(a) and 77x verbatim, and thereafter further instructing:

The burden is on the prosecution to prove each of these elements beyond reasonable doubt. The law never imposes on the defendant in a criminal case the burden of introducing any evidence or of calling any witnesses.

[R., Supp. Vol. VI at p. 926].

Strand contends that by reason of the aforesaid pretrial ruling of Judge Anderson the Government was obligated to prove each of the *offenses* conjunctively alleged in Count II, i. e., that he did employ a device, scheme, and artifice to defraud; that he had obtained money and property by means of untrue statements of material facts and omissions; and that he engaged in transactions and practices in a course of business which operated as a fraud and deceit upon principals of Epoch Corporation stock. [Appellant's Brief at pp. 39–40]. Thus, Strand contends that the Court, at the pretrial motion hearing, ruled that the Government was obligated to prove, *conjunctively*, the violations set forth *disjunctively* under § 77q(a) which provides:

§ 77q. Fraudulent interstate transactions

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, *or*

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, *or*

(3) to engage in any transportation, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C.A., § 77q(a). [Emphasis supplied].

We disagree with Strand's construction of the two rulings in question. It is clear that during the course of the pretrial hearing, Strand repeatedly argued that Count II was duplicitous in that the six subparagraphs set forth therein alleged three separate violations. It is equally clear that the Government defended Count II on the basis that it set forth and alleged one scheme or artifice to defraud and that the subparagraphs simply delineated or identified the interrelated events and transactions forming the single scheme or artifice to defraud. It is in this setting that the trial court, in our view, correctly ruled that because the Government was alleging a single scheme or artifice to defraud, it had to prove each of the events and transactions delineated within the six subparagraphs of Count II. Such a ruling, however, is not in conflict with the trial court's subsequent ruling, prior to submitting instructions to the jury, that under § 77q(a) the Government need only prove one or more of the three subsections set forth therein. Thus, we hold that the rulings were not in conflict. One presiding judge at pretrial ruled on the burden of proof relating to *a particular count*, and thereafter the trial court judge ruled on the proof *necessary to convict under a specific statute*. To be sure, we acknowledge the direct relationship between Count II and § 77q(a). Even so, the rulings are not *pari materia* as alleged by Strand. Thus, they do not give rise to any prejudice or reversi-

ble error. This is particularly true, when, as here, the instructions given, when considered in whole, were proper and adequate.

## IV.

■ Whereas Strand attacks the sufficiency of the evidence under Count II vis-a-vis the participation of Bruce Allen Jensen as an officer of Associated Underwriters, he has failed to cause to be transmitted to this Court as part of the record on appeal, a transcript of the trial proceedings. *See: United States v. Hubbard*, 603 F.2d 137 (10th Cir. 1979). Thus, we decline to consider any sufficiency of evidence contentions "since we cannot make a meaningful evaluation of the claim of error". *Herron v. Rozelle*, 480 F.2d 282, 288 (10th Cir. 1973).

■ Assuming, without conceding, on the basis of Strand's record on appeal, that Strand's appellate brief constitutes a challenge to the sufficiency of the evidence, we are bound, in reviewing the sufficiency of the evidence, following a verdict of guilty, to view the evidence in the light most favorable to the Government to determine whether there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, upon which a defendant might be found guilty beyond a reasonable doubt. *United States v. Gibbons*, 607 F.2d 1320 (10th Cir. 1979). Viewed in this light we are satisfied that the evidence amply supports the conviction.

## V.

We have carefully considered Strand's remaining allegations of error. We hold that they are, individually and collectively, without merit.

WE AFFIRM.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's treatment of the issues concerning Count I of the indictment. I believe, however, that Part III of the majority opinion seriously undermines a fundamental tenet of our jurisprudence—

that an accused defendant "be informed of the nature and cause of the accusation," U.S.Const. amend. VI, in order that he may prepare and present his defense.

I agree with the majority that Judge Anderson, who presided at the pretrial hearing, imposed on the government the obligation to prove the six alleged events and transactions set out in Count II, but not each of the alternative subparts of § 17(a) of the Securities Act of 1933. However, I find no basis for the majority's position that the trial judge did not reverse Judge Anderson on that more limited issue. I do not find in the trial judge's language, reproduced by the majority at page 577 of its opinion, even the slightest room for doubt about the subject of his ruling.

A comparison of the pretrial hearing discussion with the trial judge's jury instructions makes clear that the majority's characterization is at odds with what in fact occurred. Immediately before his ruling, Judge Anderson engaged in the following colloquy with the government attorney:

> THE COURT: Well, if [the six events and transactions] are all interrelated then you are saying you have to prove them all.
>
> MR. SNARR: I am happy and comfortable with that, Your Honor. I am not sure I am willing to say at this point if I missed one I would not have proved the total scheme to the satisfaction of the jury. We think they are all part of the scheme and we had to charge them all and we would be attempting to prove them all in support of the one charge and that's the scheme to defraud.

Record, vol. 1, at 22. Judge Anderson then charged the government with "proving all of those things." *Id.* at 23. In contrast, the trial judge instructed the jury that the fraudulent scheme could be shown much more easily:

> While a number of representations are alleged in the indictment, it is not incumbent upon the government to prove each and every one of them, but is incumbent upon the government to prove one or more, or a sufficient number of them to

indicate and show to you beyond reasonable doubt that the scheme alleged was actually set up.

Record, supp. vol. 6, at 932. I cannot imagine a more sharply defined reversal of legal theories.

The implications of the majority's opinion are especially troublesome. In this case the defendant properly believed that the government was working under one theory, and his defense was based upon that understanding. Only after his entire case was presented were the rules of the game changed. To hold, as the majority does, that the rulings "do not give rise to any prejudice," maj. op. at 577, is to render the mandates of the Fifth and Sixth Amendments meaningless. Read expansively, but not unfairly, this decision permits the government to inform the accused of the "nature and cause of the accusation" after the completion of the trial.